Can I approach? You may. Is Nagel correct? Good afternoon, your honors. On my way to the courthouse today, it's a rainy fall day, like many lawyers I drove up to Ottawa and stopped for a sandwich for lunch. And I was trying to think of exactly how to present to this court the central issue in this case. And it occurred to me that if I were to walk into a sandwich shop and run into a lawyer, and he would observe the nervousness, the shuffled papers, the dark suit, and understand what my afternoon had in store, he might talk about the case a little bit. And I would have said to him, this is a case about the essence of trust law. This is a case about trust law back to when they first started dividing equitable and legal titles over in England hundreds of years ago. Oh, then you need Justice Carter on this panel. A bit late for that. He's our resident historian. I won't go much further with that, but perhaps 10 minutes later, counsel for the bank or some similarly situated party could walk in and say, after I've left, I'm here to argue a case of tenant landlord law. We gave them notices. They didn't move. We got summary judgment. They appealed. And now we're up here to argue. Both would be accurate representations of the respective arguments that we have. It remains our belief, our strenuously held belief, that this is a case of trust law. As is stated on page 10 of the bank's brief, they've asserted in bold print for a caption, a caption of one of their subparts. Issues regarding the bank's relationship as successor trustee with Henry, Henry Hewlett, my client, as beneficiary, are irrelevant to this action for possession of the real property. They want it to be a tenant landlord case. I fervently believe it is a trust law case. Now, this is a case of trust law because, first of all, the house that the eviction relates to, the real estate that the eviction relates to, is held by the Hewlett Land Trust. It's also a matter of trust law because Henry Hewlett is the sole income beneficiary. And it's even more significantly a matter of trust law because this materially affects the trust, the essence of the trust. Mr. Hewlett had a right to receive income. Instead of receiving income, he received an in-kind benefit, namely the right to live in this home for his life. We have, it's not just the property was held by a trustee. It's not just the bank happened to be the trustee. This went to his enjoyment of what he was supposed to get out of this trust was income. And he cut a deal with Mr. Cordu to live in this home instead of receiving cash. Now, the best statement I can find of this, of the obligations of the trustee to a beneficiary, seems to be Section 78 of the Restatement Third of Trust. There's, I'll admit I use both of the old Section 170 of the Second Restatement. Some of the fairly recent cases are still using Restatement Seconds. But Section 78 has a comment that seems to say everything that I've been trying to say. It's mentioned in my brief, but I just think that it's, first of all, states that the fiduciary relationship relates to all matters within the trust relationship. It's within the trust relationship. He's living in the house instead of getting income. It relates to all matters involving the administration of the trust and its property. The house is trust property. It goes on to mention the duty of loyalty is particularly strict, even by comparison to other fiduciary relationships. For example, business partners have a fiduciary relationship not to misappropriate business opportunities or compete with the partnership. But the duty of loyalty here is even stricter. And do we know if, because I looked through the briefs and looked through the information presented, do we have any knowledge of why the bank, the trustee, culminated this action, started this action for, first of all, entry and detainer. I mean, they owe a duty of loyalty to your client, and presumably that would be to get the most income possible and to give him the greatest benefit as the sole income beneficiary. But I don't see anywhere where it's stated that they would have made more money renting it to a third partner, that it had a great value or that somehow your client was diminishing the value. I mean, what is the reason if you don't want to present any of the records regarding that? I think I can. You got this after summary judgment kind of early in with a sparse record, and I can fill in that gap. First of all, there's some concern that the house would not be rented because there's another house on the property that has been idle for significant periods of time. But the bank's basis, in all fair candor, the bank was concerned because a member of the household, it would have been a son-in-law of Mr. Hewlett, had been involved in some illegal activity. There's reason to believe that he was cultivating cannabis somewhere out there. Getting rid of him was not something that Mr. Hewlett strenuously opposed. He didn't really know anything about this, didn't like him there, didn't like him doing this. But once the bank, and then there's a dispute whether that was pretextual or whether they really were concerned. There's a parallel action right now where the bank has suggested that there was some parallel forfeiture under the federal statute. As an attorney, I've got an opinion that that's probably not the case. But that would be the bank's, and counsel can speak for his client, but I think that you've asked a very insightful question. What was at least their stated motivation? It was this concern about the family member. Now, why does the bank have such a strict duty of loyalty to Henry Hewlett? And it mainly goes back into the, what's a trust for? Trust is to protect the beneficiary's interest. And beneficiaries may be young, they may be infirm, they may have limited experience with money. For any of these reasons, they might need somebody, a bank, a corporate fiduciary, a lawyer, an uncle, to watch out for them. And also, there's the nature of the trust. The beneficiaries don't have a lot of leverage in this situation. If I have a stock that I'm not happy with the way the corporate directors are behaving, I can always sell my stock. If I have an irksome business partner, I can find a way to get out of that business, perhaps. But a beneficiary normally doesn't have the ability to just remove a trustee, as we're learning in the companion case. It can be very difficult. Now, before I go much further, I want to take one last effort, and I'm going to go back to Justice Cardozo. Justice Cardozo writes better than I speak, and I believe it's only fair that I give full attribution. But this is a case of, it's just like the case you look at for trust law, the state fiduciary duty, and it does it better than anyone that I know. It's so old. It's Northeast, not Northeast Second, just Northeast 164545. The people's name are Meinhardt, M-E-I-N-H-A-R-D, versus Salman. And part of it states that, speaking of fiduciary duties, not honesty alone, but the punctilia of an honor most sensitive is then the standard of behavior. As to this, there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the disintegrating erosion of particular exceptions. Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. And then he speaks as to the New York Court of Appeals. It will not be consciously lowered by this court, saying we are going to keep the standard as high as it has historically been. After talking at some length about the duty owed by the bank to Henry Hewlett, there are two motions here filed by the bank that I want to refer to, because I think it's important to respond to them. I understood they were going to be taken with the case. They've objected to us referring to Mr. Coriou as a trust officer. And he was, by I think every admission, the president of the bank. He was named in the respective havens wills as an executor and as a trustee. And he met with trust beneficiaries at his office in the bank and basically handled trust matters while sitting in the bank, while being the president of the bank. There was no Chinese wall, no effort to somehow say, well, I'm a trustee when I work out of my downtown office, but not when I work out of my bank office. There's no statutory or even common law definition of a trust officer that you can say that he somehow fails to meet. This is a description. These are adjectives that apply to this man and his conduct with respect to the trust. There's another issue that's been raised. And, again, if I did run afoul of the rules, I apologize. But I am attached a motion filed by the bank in the what I'll call the removal and accounting proceeding, which was the bank filed a 2-619 saying this judgment, the one we're appealing today, the summary judgment here, precludes a count that we had filed in that other case. And, basically, that argument in the 6-19 was it's the exact same cause of action. I've spent three years in law school and never understood res judicata versus collateral estoppel, and I've learned I'm not alone. But, basically, already been heard, already been decided seems to apply to both. And then you get into similarity of parties and things like that. And there was overlap sufficient. And the point is they argued one thing in that case, which is basically it's the same action. And then they argued something else in this case, which is the rules that you're trying to apply here don't apply to this action. Now, what rule am I trying to apply? Well, mainly, there's this Enestoppel case. I've only got two Illinois cases, both Supreme Court cases, both approximately as old as I am to work with here. But the Enestoppel case essentially said that if it's an equitable matter, that in that case, it was a situation where somebody was trying to get specific performance of an easement to run a sewer line. Again, it was a long-term interest in real estate without a writing. And people that didn't like that easement anymore said, well, wait, that's not in writing statute of frauds. Illinois Supreme Court said, no, oral interest in real estate are enforceable in equity. What do we have here? Thank you. We have an oral interest in real estate in equity. Last point I'm going to make very briefly is this. There's a case where Loeb v. Jindal, there was a confidential relationship, a husband and wife relationship. The husband got the wife to sign away basically her right to alimony and didn't disclose that, well, because I promised you that it would still be enforceable orally, but you didn't get it in writing, it doesn't count. The Illinois Supreme Court long ago said, no, that is not an opportunity to bring in the statute of frauds. In other words, the trustee relationship is controlling. Trying to use the statute of frauds to somehow circumvent this oral promise is not effective. If there's any questions, I'd be happy to try to answer them. Thank you. A difference between the equitable and the promissory stop, all right, with regard to that last case that you cited. Yes, it's our belief, and it's in my reply brief, that even if we buy into the notion that the statute of frauds would become the rule, but the only exception would be equitable estoppel, Mr. Cordayew should have known that it was not in writing and that they always had this apparent argument that they could void it by the statute of frauds. And again, it goes to him being a college graduate, a longtime banker, a president of a bank, a person who managed trust in estates. So we would think that on these facts, even if the court chooses to apply the equitable estoppel argument or the analysis, that we would be able to satisfy all promises. I believe they've conceded for the purpose of this motion every other promise. And just so I can be completely sure, you are denying that this is a lease arrangement, right? I, at one point in my brief, did deny that it was a lease. And I don't know really how to characterize it. It's one of these things that has many of the characteristics of a lease. If it's material to the court's analysis, I'll make an effort to respond to it during my reply time. But I do think that the main point of that argument was that a argument – if I could just reconfigure my thoughts a lot, counsel, the argument this time doesn't really satisfy that. Thank you. Thank you. Mr. Shull? Good afternoon. May it please the Court, Madam Clerk, Mr. Nigel. The issue in this case is relatively simple. It's a forcible entry and detainer case. And as the courts have said time and time again, the main issue in these cases is who is entitled to possession of the property at issue. Because the issue in this case is relatively simple, it doesn't need to be complicated by these fiduciary issues that are raised by Mr. Nigel. But doesn't your right to possession derive from the fiduciary relationship? Not necessarily. You have an executor's deed. That's correct. And so you have as much right to that property as is given to you by the trust documents. And the trust documents – the trust was created to protect – well, to give Mr. Hewlett income. He's the income beneficiary of that. Aren't you in a fiduciary relationship to him? We are in a fiduciary relationship with Mr. Hewlett. We are also in a fiduciary relationship with his children who receive income after Mr. Hewlett's passing. I think what's important also to note is that the will does not give Mr. Hewlett the right to possession of the property. The will gives Mr. Hewlett the right to income from the property. Did you ask him to pay rent? The bank, I guess, saw it as an unnecessary step. Essentially what would be happening would be Mr. Hewlett would be paying rent to the bank. The bank would be turning right around and paying that rent back to Mr. Hewlett by means of his income. I'd like to start real briefly on the facts that did lead to the circumstances where we're at in this case. On August 3, 2010, the bank discovered from a newspaper article in a local newspaper that the police found 40 marijuana plants growing on the property that's subject of the trust. Not only were they growing on the property, but the police said in the newspaper article that there were three rows of marijuana growing in the house. Two days later, on August 5, 2010, the bank took action in providing Mr. Hewlett with a notice to vacate the property. The bank thought, we need to do something to protect this property. Mr. Hewlett and Mrs. Hewlett refused to vacate the property. The bank was forced to file a forcible entry and detainer action. The bank later filed another notice to vacate the property. Eventually we wound up in a situation where we were arguing for summary judgment in front of the trial court on August 2, 2011, where we basically said, we're going to assume for purposes of summary judgment that the Hewlett's were told that they could live on this property for the rest of their lives. The trial court started by noting that nothing in the will, or the trust document, gave Mr. Hewlett the right to possession of the property. The court went on to note that essentially the Hewlett's were asking for the right to live on this property forever, for the rest of Mr. Hewlett's life, without any reasonable terms and conditions attached to his living on the property. And the court rejected that argument and granted the bank summary judgment. Well, today we're here at the appellate court and the Hewlett's are asking this court to grant them the same thing. The right to live on the property for the rest of Henry's life without any reasonable conditions whatsoever as to their residency on the property. As I mentioned, the will does not give Henry the right to possession. Because the will does not give Henry the right to possession, they have to look elsewhere for their possession to give them a basis to continue possession. So what they point to in their defense is this alleged statement that the executor of the estate made to the Hewlett's that they could live on the property for the rest of their lives. And we've conceded that for the purpose of our motion for summary judgment. There's simply nothing else other than the alleged vague oral statement that Henry could live on the property for the rest of his life, upon which to support their claim for possession. In response to the arguments made by Mr. Nigel, I'd like to make three points. First, if Mr. Korteyu did make the statement, which we concede for the purposes of our motion, that statement creates only an at-will tendency. Mr. Nigel actually cites in his brief the case of American Management Consultant LLC v. Carter, in which this court considered whether vague terms could be used to enforce a lease agreement. In that case, the plaintiff, the landlord, brought a forcible entry and detainer action seeking payment of rent under the vague terms of this lease. And the court said that, well, we don't think that you can enforce this lease because the statute of frauds applies only to those situations where the parties have, at a minimum, an actual agreement as to the letting of the subject property that is enforceable under the law. I don't think there's any dispute in this case that the oral statement made by Mr. Korteyu was vague. If that's the case, which it is, the defendants are not entitled to use this lease to enforce this lease because, in fact, there was no lease. In essence, all they were were at-will tenants on the property. Illinois courts have long held that at-will tenants are not entitled to notice. The minute they're asked to leave, they need to leave the property. I think I'm having a problem with this being a lease. And I would agree with you. The terms of this were extremely vague, and absent definite and certain terms, there was no lease. So you can't do a forcible entry and detainer if there's no lease. Well, we couldn't. The American management case drew a clear distinction between cases for rent and cases for possession. You're right. You could not enforce the lease, the alleged lease, where there are vague terms. In the American management case, the landlord was seeking to enforce the terms of the lease. In this case, the party seeking to enforce the terms of the lease are the defendants or the tenants. The second point in response to the Hewlett's arguments, even assuming that there was greater than the at-will tenancy, the fiduciary duties discussed at length really need not be considered unless there's a new exception created to the statute of frauds. As the court previously pointed out, there is a distinction between promissory estoppel, which is not an exception to the statute of frauds, and equitable estoppel, which is an exception to the statute of frauds. Here we clearly have allegations supporting a claim or claiming promissory estoppel. There's no facts in the records. There's no allegation in the record that would suggest that this is a case of equitable estoppel. So what the Hewlett's need to do in order to defeat the statute of frauds is create some expansion of this promissory estoppel. And what they've done is try to apply an expansion of the promissory estoppel into this situation where there are fiduciary duties. Mr. Nigel points to a case where there was equitable estoppel, but in that case, the person making the promise was an attorney, and there was evidence that at the time he made the statement, he knew the statute of frauds would prevent his agreement from being enforced. In this case, there's absolutely nothing in the record that would suggest that Mr. Porter, you knew that what he was saying could not be enforced due to the statute of frauds. All we have here is promissory estoppel. It does not reach the level of equitable estoppel. And finally, even considering the bank's fiduciary duties, it is undisputed the bank believed it was acting pursuant to those fiduciary duties when it sought to remove the Hewlett's from the property. Although Henry is the only current income beneficiary, or beneficiary entitled to income at this time, his sons are also beneficiaries of the trust. When the bank learned that there was marijuana being grown on the property, it was put in a difficult situation. It could either take action to remove Mr. Hewlett and the people he was allowing to grow marijuana on the property, thereby protecting the property held by the trust from further damage by Mr. Hewlett, or he could allow Mr. Hewlett to remain on the property, allow that individual that was growing the marijuana on the property, and risk something happening to the property and face a breach of fiduciary duty claim for Mr. Hewlett's sons. The bank was really caught in a tough situation. What the bank decided to do was to seek to remove the person who was allowing over 40 plants of marijuana to be grown on the property, including inside the house. This is the house that Mr. Hewlett was actually living in and not the second house on the property. That's correct, Your Honor. As the bank was entitled to do, it chose the course of taking action necessary to protect the property. The defendants, the Hewlett's, have raised argument after argument that does not address the sole issue in this forcible entry and detainment matter, the issue of the right to possession, or issues which simply have no legal merit. In doing so, the defendants asked the court to reach the absurd result that the Hewlett's can reside on this property for the rest of Mr. Hewlett's life without the attachment of any reasonable terms and conditions. The trial court properly rejected these arguments and the absurd result sought by the defendants. The bank would ask this court to affirm that ruling, and I'd be happy to answer any questions that you have. I just have a couple of, I guess, cleaning things that are just informational. I know there's two pieces of property that are in the trust, but I was confused whether or not that was the pasture, which I think is about 25 acres, and then the residence. If those are the two, or if those are one, and then there's yet another piece.  The one tract is solely for farmland. The other tract is what we're talking about here, two houses, which we've referred to as the large house and the small house, as well as pasture, as well as some farmland. So there's a lot going on in that one tract of property. Okay, but this really, the forcible entry and detainer action, is only relative to this piece of property, not to the other property that is in the trust, even though he is the income beneficiary for the entire trust, correct? That's correct. Thank you. How are taxes being paid if there's no income? Well, there is income being generated by the trust. As I mentioned, there is another piece of property that's farmland that gets annual rents. I believe there's also farmland on this other tract where this house is located. That collects annual rents for farmland purposes. At this time, the bank is renting out the large house to someone who is paying rent. Income is being generated in that manner. The pasture is also being rented out, and that is generating income as well. So the parcel that has a lot going on in it actually was subject to rental agreements that were generating income? For the pasture and the farmland. The farmland, yes. And the only part of all that's going on in that parcel of property is the house? He wasn't being charged to stay in the house? That's correct. There was a time when he had animals in the pasture as well. So the Hewlett's are part of the big house and you're renting it? The Hewlett's were never in the big house. The Hewlett's were always in the small house. The Hewlett's remain in the small house at this time. So there hasn't been a removal order? The removal order was stayed. And frankly, the bank doesn't necessarily have a problem with the Hewlett's remaining in the house as long as they agree to some reasonable terms and conditions. They can't have felons living in the house and they can't have marijuana growing in the house. That's all that we're asking for in this case. Thank you. Mr. Nigel? Have you collected your thoughts? I believe so. I needed to look at the portion of my brief discussing the notion of whether or not this qualifies as a lease. And I think I may have framed it better when I was writing than when I was speaking. And I do believe that in order to trigger the Forcible Entry Act, a statute contrary to or fashioned in opposition to the common law, it should be narrowly construed, you need to have something that fits into the definition of a lease. And in the absence of that lease, you have an agreement of some sort. In this case, we would leave an agreement between a trustee and a beneficiary, incidental to the administration of the trust, an oral agreement. And so I think that now that I've had a chance to think about it, my suggestion to the court would be that this doesn't really fit into the category of a lease. It has some aspects. It involves people living in a home that they don't own, but rather they have an interest in as trust beneficiaries. I'd like to help get a little better understanding of the facts. The tract that we're talking about, there's land in Fulton County, not here, not before us today. This is a quarter section or 160 acres, substantially square, in McDonough County. Of that, the house, there's a small house, which we're talking about, and the 25 acres of pasture, which we're talking about. That would leave approximately 130 acres from the McDonough County tract, which has nothing to do with today's action. I'd like to kind of go back to a couple of... Is the 25-acre pasture being rented out? I believe the bank has since. The arrangements that we've reached post-judgment during this, there's a stay on removing the Hewlett's from the house. However, the bank is now occupying the 25 acres, and I believe they may have a tenant in there. The Hewlett's were required to get rid of their cattle, their donkey, their livestock as part of the negotiations post-summary judgment. And their marijuana plants.  That was pre-judgment, but yes, ma'am. Absolutely. I'd like to just go back to the newspaper... Why can't an agreement be reached as to reasonable conditions for them to remain in the house? We thought that there were reasonable terms in place previously. I mean, to say that this was some abstract... There were terms reached when they moved in that they would make certain improvements to the house for which they would not be compensated for if they're forced to leave. They had some requirement not to tear up the place. Had there been something in the nature of a lease, it probably would have barred illegal activity. I want to go back to the newspaper article thing because I think that's kind of telling that reacting to only do a newspaper article can sometimes get one in trouble. In my home county, there was an article that teenagers on graduation night or eve had done $85,000 damage to the high school. Ultimately, it was learned that the damage was closer to $4,000. And restitution was ordered to compensate the school district. And again, that somebody would put something in a newspaper article and the bank was probably on inquiry notice. But then to treat all that as what they're up here arguing today is that if it goes to their state of knowledge when they delivered the first notice, that's acceptable. But to treat that as still a fact at this stage when there's been opportunity for further inquiry, I mean, I will admit that the stepson was convicted of the cultivation. There's nobody here trying to get the stepson back into that home. I do want to go to one last point, though, because counseling, that's what I've got time for. There's a timing issue, and I've raised it in the back of both of my briefs. And it goes something like, if they have a one-year lease, because, again, I know the court has considered the possibility that there is no lease, but if there's a one-year term here, they have to give 60 days' notice. And the relevant notice, the second notice to quit was given on March 15, 2011. And the earliest date that would have been the beginning of that lease, or that term, would have been two months after that, 60 days after that. That would be May 15. Mr. Korty, you testified that he thought the Hewletts moved in in May or June, which leaves some question, a material issue of fact, as to whether or not they moved in before or after May 15, which goes to the timeliness of that notice. And, again, forcible entry actions are strictly construed. And if you're one day, I've served four-day notices, and I've had the case spit back at me. Any lawyer that's done eviction work understands. Five days' notice means five days. Sixty days' notice means 60 days. Thank you. We will be taking the matter under advisement and rendering a decision without undue delay. I think are we standing in recess for a panel change, or are we done? We're done. We'll reconvene next month.